IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Franklin Park Lincoln-Mercury, Inc., | Case No. 3:09 CV 792 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Ford Motor Company, | |
| Defendant. | |

## INTRODUCTION

This is a suit by an automobile dealer against a manufacturer. Plaintiff Franklin Park Lincoln-Mercury ("Franklin Park") claims that Defendant Ford Motor Company ("Ford") violated (1) its common law fiduciary duties to Plaintiff; (2) provisions of the federal Automobile Dealers' Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221-1226; and (3) provisions of the Ohio Motor Vehicle Dealers Act, Ohio Revised Code Sections 4517.01-4517.99. Pending is Ford's Motion to Dismiss all three counts of the Amended Complaint (Doc. No. 31), pursuant to Federal Civil Rule 12(b)(6), for failing to state claims upon which relief can be granted. For the reasons set forth below, Ford's Motion is granted in part and denied in part.

## BACKGROUND

Franklin Park is a dealer of new Lincoln-Mercury brand motor vehicles located in Toledo, Ohio. Franklin Park has been a dealer of these Ford products since 1977. The relationship between Franklin Park and Ford is governed by written franchise agreements. Before 2008, there was another Lincoln-Mercury dealership, Rouen Lincoln-Mercury ("Rouen"), located nearby, in Maumee, Ohio. For the last ten years, the President of Franklin Park, Robert Fleisher, has repeatedly advised Ford that

the Toledo-area market cannot sustain two dealers of Lincoln and Mercury products and has lobbied Ford to become the sole Lincoln-Mercury dealer in the Toledo-area. From 2006 through the present, Ford has sought to consolidate and reduce its dealer network.

In late 2007 or early 2008, Brondes Ford Maumee, Ltd. ("Brondes"), also located in Maumee, Ohio, began negotiations with Rouen to purchase the Rouen dealership. Franklin Park alleges Ford participated in these negotiations and kept them secret from Franklin Park. Under the final agreement between Rouen and Brondes, Brondes agreed to operate the Lincoln-Mercury dealership at the Rouen location for however long it needed to relocate the dealership to the Brondes location. Brondes operated the Rouen dealership at the Rouen location for one day before moving the entire operation to the Brondes location. After Rouen and Brondes finalized their agreement, Ford notified Franklin Park of the Rouen/Brondes ownership change.

Immediately after being notified, Franklin Park protested to the Ford Dealer Policy Board, and also lodged a protest with the State of Ohio Motor Vehicle Dealers Board ("Board"). Franklin Park claimed Ford was required to notify Franklin Park of the contract between Brondes and Rouen, and that Franklin Park had a right to notice and a right to protest. The Board's Hearing Examiner concluded Ford did not need to provide Franklin Park notice of the ownership change under the Ohio Motor Vehicle Dealers Act because: (1) the Rouen/Brondes transaction did not create a new motor vehicle dealer in the relevant market area and thus Revised Code Section 4517.50(A) -- the notice requirement -- did not apply; and (2) the relocation of the Rouen dealership to the Brondes location was a move under one mile, and thus fell within an exception to the notice requirement under Revised Code Section 4517.50(C)(1). Because notice was not required, the Examiner determined the protest should be dismissed.

The Board adopted the Examiner's Report and Recommendation. Franklin Park then appealed the Board's decision to the Franklin County Court of Common Pleas. The court affirmed that the Rouen/Brondes transaction fell within two exceptions to Section 4517.50 (A)'s notice requirement -- (C)(1), exempting relocations of existing dealerships of less than one mile, and (C)(2), exempting sales or transfers of existing dealerships where "the transferee proposes to engage in business at the same location." Therefore, Franklin Park's protest was denied.

Franklin Park then appealed to the Ohio Tenth District Court of Appeals. The appeals court held the Board and Common Pleas Court correctly determined Franklin Park was not entitled to notice, again because of the two exceptions to the notice requirement.

Franklin Park brought the present suit alleging Ford violated its fiduciary duty provisions of the Federal ADDCA, and provisions of the Ohio Motor Vehicle Dealers Act. These claims are based on Ford's knowledge of, and involvement in, the Rouen/Brondes transaction. Franklin Park alleges Ford's actions were undertaken in bad faith and with the intent of putting Franklin Park out of business. Franklin Park specifically alleges Ford knows the Toledo market cannot sustain two Lincoln-Mercury dealerships, and that Ford made a "calculated and deliberate attempt to circumvent Ohio law and Franklin Park's rights" (Doc. No. 31, p. 9).

Ford filed a Motion for Judgment on the Pleadings, or to Dismiss, arguing that Franklin Park has already litigated all the issues in the present case, and as such is barred by collateral estoppel from litigating them here yet again (Doc. No. 21). In an opinion by Judge David Katz, this Court held that Franklin Park's claims under the ADDCA and for breach of fiduciary duty were not precluded by collateral estoppel; that Franklin Park's bad faith claim under the Ohio Motor Vehicle Dealers Act, Revised Code Section 4517.59, was also not precluded; but that Franklin Park was precluded from asserting other claims under the Ohio Motor Vehicle Dealers Act (Doc. No. 28).

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the court is to test the legal sufficiency of the complaint. In scrutinizing a complaint, the court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949). This standard for Rule 12(b)(6) applies to "all civil actions." *Id.* at n. 4 (internal quotation omitted).

## DISCUSSION

**Breach of Fiduciary Duty**

Franklin Park's first claim alleges that Ford breached its fiduciary duties to Franklin Park. Franklin Park contends Ford breached its duty by violating three different sources of law: (1) the Lincoln Sales and Service Agreement and Mercury Sales and Service Agreement (common law), (2) the Ohio Motor Vehicle Dealers Act, and (3) the federal ADDCA. Ford argues the fiduciary duty claim should be dismissed because "no fiduciary duty arises out of the franchisee-franchisor,

4

manufacturer-dealer, arm's length business relationship between Ford and Franklin Park" (Doc. No. 39, p. 5).

### *Common Law*

To the extent that Franklin Park's fiduciary duty claim relies upon a contractual relationship between the parties, Ford contends that such claim must be governed by Michigan law because of a choice-of-law clause in the Sales and Service Agreement ("SSA") (Doc. No. 39, p. 6). However, the SSA is not part of the record. In a prior ruling, Judge Katz used Ohio law for breach of fiduciary duty (Doc. No. 28, p. 12), and this Court will do the same here. But even should Michigan law apply, the outcome would be the same. Ohio and Michigan law have nearly identical standards for the establishment of a fiduciary relationship. *See, e.g., Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996) (Ohio law); *Bero Motors, Inc. v. Gen. Motors Corp.*, 2001 Mich. App. LEXIS 2029, at *11-12 (Mich. App. Oct. 2, 2001) (Michigan law).

To establish a breach of fiduciary duty under Ohio law, a plaintiff must show: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) a resulting injury. *Camp St. Mary's Ass'n of W. Ohio Conference of the United Methodist Church v. Otterbein Homes*, 176 Ohio App. 3d 54, 68 (2008). "A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another, and there is a resulting position of superiority or influence, acquired by virtues of this special trust." *Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996). Further, "[a] fiduciary relationship does not exist between a franchisor and a franchisee in the absence of a statute expressly creating such a fiduciary relationship, or in the alternative, absent an understanding, held by both parties to the subject agreement, that a special trust and confidence has been reposed by the franchisee in the franchisor." *Saydell v. Geppetto's Pizza*, 100 Ohio App. 3d 111, 130 (1994).

Courts have repeatedly declined to find a fiduciary relationship between franchisors and franchisees. *See*, *e.g., Saydell*, 100 Ohio App. 3d at 131; *Aerospace Am. Inc. v. Abatement Tech., Inc.*, 738 F.Supp. 1061, 1071 (E.D. Mich); *O'Neal v. Burger Chef Sys., Inc.*, 860 F.2d 1341 (6th Cir. 1988); *Bero Motors, Inc.*, 2001 Mich. App. LEXIS 2029 at *12-13 (finding that the parties were experienced, for-profit entities in a commercial setting, and simple allegations of reliance on each other were insufficient to establish a fiduciary relationship). This general rule extends to cases involving Ford's franchise agreements. *See*, *e.g., Capital Ford Truck Sales, Inc. v. Ford Motor Co.*, 819 F.Supp. 1555 (N.D. Ga. 1992); *Rick Michaels Ford, Inc. v. Ford Motor Co.*, 1982 U.S. Dist. LEXIS 16502 *3 (N.D. Ill. 1982) (holding that there is no fiduciary duty inherent in a business relationship, and franchise relationships are primarily business in nature).

Only where the relationship between franchisor and franchisee involves "exceptional circumstances" has a court found a fiduciary relationship. *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 219 (S.D.N.Y. 2007). In *Manhattan Motorcars*, the alleged "exceptional circumstances" involved a number of terms contained in the franchise agreement granting Lamborghini "the authority to exercise near life and death economic power over [Manhattan]." 244 F.R.D. at 219 (internal quotation omitted). The terms of the franchise agreement required Manhattan to "provide reports to [Lamborghini] concerning sales, inventories, customer data, and all information concerning [Manhattan]'s business." *Id.* (internal quotation omitted). The court held the allegations of economic dependency, combined with the requirement to disclose confidential information, were sufficient to plead the existence of a fiduciary relationship. Although *Manhattan Motorcars* was decided under New York law, its holding is in line with the "special trust" touchstone under Ohio law.

6

Franklin Park's allegations track the "exceptional" facts alleged in *Manhattan Motorcars*. The Amended Complaint alleges the SSA places "Ford in a position of disproportionate power and dominance over Franklin Park," requires Franklin Park to provide "confidential and proprietary information to Ford, creating a confidential relationship," and makes "Franklin Park dependent upon Ford for economic survival" (Doc. No. 31, p. 10). In sum, Franklin Park asserts the "special trust" required for a fiduciary duty. While the Court does not have the franchise agreement to verify these factual allegations, if the allegations are accepted as true (as they must be), Franklin Park states a plausible claim. *Iqbal*, 129 S. Ct. at 1949.

### *Ohio Revised Code Section 4517.01*

Although Franklin Park pleads a plausible common law fiduciary duty claim, its assertion that a fiduciary duty is created by statutory obligations under the Ohio Revised Code is without merit. The Amended Complaint alleges that a fiduciary relationship has been established as a result of Revised Code Section 4517.01 (Doc. No. 31, ¶ 84). In rebutting Franklin Park's claim, Ford points to *Pasqualetti v. Kia Motors America, Inc.*, 2009 LEXIS 91649 (N.D. Ohio 2009), where the court declined to find a fiduciary relationship between a prospective franchisee and franchisor based on the Ohio Revised Code. *Pasqualetti* is not directly on point, because the relationship between the parties in *Pasqualetti* was merely prospective. Nevertheless, Franklin Park fails to explain how this statute creates a fiduciary relationship (Doc. No. 31, ¶ 84; Doc. No. 38, pp. 12-18). The Revised Code has no language creating a special trust between the parties, nor is there case law support for the existence of a fiduciary duty based on the statute.

### *ADDCA*

Franklin Park also asserts that a fiduciary duty is created by the obligations of 15 U.S.C. § 1221. Once again, Franklin Park does not explain how this Act creates such a duty (Doc. No. 31,

7

¶ 84 ; Doc. No. 38, pp. 12-18). This Court is unable to find any support for the proposition that the Act creates a fiduciary duty. The Act itself has no language indicating the creation of a fiduciary duty or confidential relationship. *See*, *Anchor*, 94 F.3d at 1023 (fiduciary relationship requires a formal appointment of fiduciary, or an informal confidential relationship).

**Violations of ADDCA**

Franklin Park's second claim alleges violations of the federal ADDCA. Ford argues this claim should be dismissed because Franklin Park fails to allege all of the ADDCA pleading requirements (Doc. No. 39, pp. 10-15).

Under the ADDCA, an automobile dealer may bring suit against automobile manufacturers under either of two circumstances: (1) failure to act in good faith in performing or complying with any of the terms or provisions of the franchise; or (2) if the dealer's franchise has been terminated, canceled, or not renewed. *See* 15 U.S.C. § 1222. Franklin Park's franchise agreement is still in place, so it must rely on Ford's alleged failure to perform its obligations in good faith. To establish such a claim, Franklin Park must show that (1) plaintiff is an automobile dealer; (2) defendant is an automobile manufacturer; (3) there is a manufacturer-dealer relationship embodied in a written franchise agreement; and (4) defendant manufacturer failed to act in good faith, and thus injured the plaintiff dealer. *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 93 (3d Cir. 2000). The first three elements are clearly satisfied, so the question is whether Franklin Park has alleged Ford failed to act in good faith. "Good faith" is defined in the ADDCA as:

> The duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided*, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

15 U.S.C. § 1221(e).

Courts have given the ADDCA's good faith requirement a "narrow, rather than expansive, construction." *Northview Motors*, 227 F.2d at 93. The ADDCA does not "protect dealers against all unfair practices, but only against those breaches of good faith evidenced by acts of coercion or intimidation". *Id.* ("The dealer must establish that the manufacturer's conduct constituted 'coercion, intimidation, or threats of coercion or intimidation' directed at the dealer."). *See, also, Gen. Motors Corp. v. The New A.C. Chevrolet*, 263 F.3d 296, 325 (3d Cir. 2000).

Under this standard, Franklin Park fails to allege a plausible bad faith claim. In its Amended Complaint, Franklin Park asserts the bare legal conclusion that Ford "acted in bad faith toward Franklin Park, and Ford's conduct has been calculated to coerce, intimidate, and/or threaten Franklin Park" (Doc. 31, ¶ 79). Franklin Park does not point to a single one of the franchise terms or provisions which Ford failed to perform in good faith (Doc. No. 31, pp. 9-10). There is no allegation that Ford engaged in coercive or intimidating behavior towards Franklin Park; no threats or intimidation by whom, when, or how.

Although a complaint does not need to contain "'detailed' factual allegations, there must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true." *Twombly*, 550 U.S. at 555. Franklin Park contends that it has sufficiently pleaded its case on the basis of *Junikki Imports, Inc. v. Toyota Motor Co.*, 335 F. Supp. 593, 595 (N.D. Ill. 1971). In *Junikki*, the court found a complaint sufficient when it stated that "defendants embarked on a concerted effort to put him out of business by purposely failing to provide an adequate number of cars needed to finance his dealership and by refusing to deliver parts for his service facilities." *Id.* However, Franklin Park's Amended Complaint is unlike that in *Junikki*, because Franklin Park fails to enumerate any specific ways in which Ford coerced, intimidated, or threatened Franklin Park.

9

**Ohio Motor Vehicle Dealers Act**

Franklin Park alleges various violations of the Ohio Motor Vehicle Dealers Act, Revised Code Sections 4517.01-4517.99. Ford argues that specific claims asserted by Franklin Park are barred by collateral estoppel and that the remaining claims should be dismissed because Franklin Park failed to identify essential elements.

*Collateral Estoppel*

Collateral estoppel precludes certain issues already determined at administrative proceedings from relitigation. *State ex rel. Davis v. Pub. Employees Ret. Bd.*, 120 Ohio St. 3d 386, 392 (2008). Franklin Park is precluded from relitigating the issue of whether it was entitled to notice of the Rouen/Brondes transaction and an opportunity to protest that transaction, based on Revised Code Section 4517.50 (Doc. No. 28, p. 10). Franklin Park is similarly precluded from relitigating facts "actually litigated, directly determined, and essential to the judgment in the prior action." *State ex rel. Davis,* 120 Ohio St. 3d at 392 (quoting *Goodson v. McDonough Power Equip.*, *Inc*., 2 Ohio St. 2d 193, 201 (1983)). In this case those precluded facts are: (1) the Rouen/Brondes transaction was for the sale of an existing dealership; (2) Brondes intended to engage in business at the Rouen location; (3) the move of the new Brondes Lincoln-Mercury dealership to the Brondes location was less than a mile; and (4) a claim based on Revised Code Section 4517.57 (Doc. No. 28, p. 10).

*Failure to Act in Good Faith*

The Ohio Motor Vehicle Dealers Act bars Ford from failing to act in good faith in its treatment of Franklin Park. Revised Code Section 4517.59(A) prohibits franchisors "in acting or purporting to act under the terms, provisions, or conditions of a franchise or in terminating, canceling, or failing to renew a franchise, [to] fail to act in good faith." Revised Code Section 4517.57. "Good faith" is defined as:

10

> honesty in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealing in the trade as is defined in division (S) of section 1301.01 of the Revised Code, including, but not limited to, the duty to act in a fair and equitable manner so as to guarantee freedom from coercion, intimidation, or threats of coercion or intimidation; provided however, that recommendation, endorsement, exposition, persuasion, urging or argument shall not be considered to constitute a lack of good faith.

Revised Code Section 4517.01(BB).

Franklin Park asserts Ford failed to act in good faith by "taking advantage of a loophole in the Ohio Dealer Act by structuring the Brondes transaction to avoid a protest," in addition to "installing a Lincoln/Mercury dealership at Brondes when it knew the Toledo market could not support two Lincoln/Mercury points" (Doc. No. 38, p. 22).  But Franklin Park does not allege that Ford failed to act in good faith with regard to the "terms, provisions, or conditions" of the franchise agreement. Revised Code Section 4517.59(A).  The Amended Complaint does not reference any particular term or condition of the franchise agreement.  Rather, Franklin Park simply states that Ford's efforts to drive Franklin Park out of the market and out of business constitute bad faith (Doc. No. 31, ¶ 73). Because none of the alleged facts are connected to the terms of the franchise agreement between Franklin Park and Ford, the bad faith claim under the Ohio Motor Vehicle Dealers Act must be dismissed.

### *Predatory Practice of Discrimination*

Franklin Park's final claim under the Ohio Act alleges Ford acted in a discriminatory manner and engaged in a predatory practice (Doc. No. 31, ¶ 74). Revised Code Section 4517.59(M) prohibits a franchisor from engaging in "any predatory practice or discriminat[ing] against any new motor vehicle dealer."[1]  Franklin Park asserts that Ford's plan to consolidate its brand with Brondes was an

---

[1] The word "new" modifies "motor vehicle," not "dealer."  *See* Revised Code Section 4517(C) (defining "new motor vehicle" as a term under statute).

11

attempt to drive Franklin Park out of business, that Ford knew the Toledo area could not sustain two dealers, and that by combining the Lincoln and Mercury brands at the Brondes store, Ford had made a conscious decision to effectively close the Franklin Park store (Doc. No. 31, ¶¶ 86-75).

Franklin Park alleges facts consistent with a claim for "predatory practice" acting in a "discriminatory manner." Franklin Park asserts "Ford has chosen Brondes as the Toledo Lincoln/Mercury dealer it wishes to survive" and "Ford's installation of the Brondes Lincoln/Mercy dealership was designed to drive Franklin Park out of the market and out of business" (Doc. No. 31, ¶¶ 69-70). This claim is supported by sufficient facts to be plausible and therefore withstand the Motion to Dismiss.

## CONCLUSION

For the above reasons, Ford's Motion to Dismiss for failure to state claims upon which relief can be granted (Doc. No. 34) is granted in part and denied in part. Franklin Park's claims under the ADDCA and under Revised Code Section 4517.59(A) are dismissed; the common law fiduciary duty claim and the claim under Revised Code Section 4517.59(M) remain.

The Court will hold a Status Phone Conference on **Wednesday, July 7, 2010 at 9:00 a.m.** The Court will initiate the call.

IT IS SO ORDERED.

                                                s/ *Jack Zouhary*
                                                JACK ZOUHARY
                                                U. S. DISTRICT JUDGE

                                                July 2, 2010