IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Franklin Park Lincoln-Mercury, Inc., | Case No. 3:09 CV 792 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Ford Motor Company, | |
| Defendant. | |

## INTRODUCTION

This is a suit by an automobile dealer against a manufacturer. This Court incorporates by reference the facts as set forth in a previous Order, granting in part and denying in part Defendant Ford's Motion to Dismiss (Doc. No. 41 at 1–3). That Order dismissed Plaintiff Franklin Park's claims under the Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221–1226 and most of Plaintiff's claims under the Ohio Motor Vehicle Dealers Act ("OMVDA"), Ohio Revised Code § 4517.01 et seq. (Doc. No. 41 at 12). Two of Plaintiff's allegations survived: (1) breach of common law fiduciary duty; and (2) predatory practice under Ohio Revised Code § 4517.59(A)(15). Pending is Defendant's Motion for Summary Judgment on these remaining claims (Doc. No. 81). This Court has reviewed Defendant's Motion as well as Plaintiff's Opposition (Doc. No. 85), and Defendant's Reply (Doc. No. 87).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## CHOICE OF LAW

In diversity, federal district courts generally apply state substantive law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). A district court applies the law of the state in which it sits, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941), and is bound by the decisions of the state's highest court. *Meridian Mut. Ins. Co. v. Kellerman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

There is a dispute whether to apply Ohio or Michigan law to Plaintiff's fiduciary duty claim. This dispute arises because the Sales and Service Agreement ("SSA") contains a choice-of-law provision which construes the agreement "in accordance with the laws of the State of Michigan." (Doc. No. 82-2 at 38). The laws of Ohio and Michigan are generally on equal footing. *Compare Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996) (applying Ohio law), *with Vicencio v. Ramirez*,

211 Mich. App. 501, 508 (Mich. Ct. App. 1995). However, Defendant favors Michigan and Plaintiff favors Ohio.

Which is it, Ohio or Michigan? This Court first looks to the rule Ohio courts apply to assess the validity of choice-of-law provisions. *See Consolidated Jewelers, Inc. v. Standard Fin. Corp.*, 325 F.2d 31, 35 (6th Cir. 1963). Courts in Ohio follow the rule set forth in the Restatement (Second) of Conflict of Laws § 187 (1971). *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St. 3d 436, 438–39 (1993). Section 187 states:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied. . . unless either . . . the chosen state has no substantial relationship to the parties . . . or . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state . . . .
> Restatement (Second) of Conflict of Laws § 187(2) (1971).

Michigan has a substantial relationship to the parties -- Defendant's principle place of business is in Michigan -- and Plaintiff makes no showing Michigan law is somehow antithetical to Ohio policy or that Ohio has a greater interest in this litigation. Thus, the only question remaining is whether the alleged fiduciary duty violation arose out of the "contractual rights" of the parties.

It does not. A breach of fiduciary duty sounds in tort, *Nixon v. Bank One of E. Ohio, N.A.*, 74 Ohio App. 3d 550, 553 (Ohio Ct. App. 1991), and will only impinge upon "contractual rights" when those duties are memorialized in the contract. *Creauro v. Duko*, 2005-Ohio-1342, at ¶ 39 (Ohio Ct. App. 2005). The SSA does not memorialize fiduciary duties. Thus, the parties did not choose Michigan law to govern the creation of a fiduciary, or any other tort liability.

Accordingly, this Court must follow Ohio precedent to determine which law applies. Ohio has adopted the "significant relationship" test, laid out in Restatement (Second) of Conflict of Laws § 145 (1971). *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339, 342 (1984). This test considers

3

"where the injury occurred, . . . where the conduct causing the injury occurred, . . . place of business of the parties, and place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2).

Applying these factors, Plaintiff's fiduciary duty claim is governed by Ohio law. First, Plaintiff alleges its dealership in Ohio was injured. Second, the injury was allegedly caused by Defendant's approval of the Rouen/Brondes transaction in Ohio. Third, Plaintiff's principle place of business is Ohio. Finally, the relationship between the parties involves the SSA governing Plaintiff's dealership in Ohio.

## DISCUSSION

Plaintiff alleges Defendant violated its fiduciary duty and engaged in predatory and/or discriminatory behavior in violation of the OMVDA. Each claim is fully discussed below.

### Fiduciary Duty

Plaintiff maintains a fiduciary relationship existed between it and Defendant. This Court's previous Order (Doc. No. 41 at 5) summarizes:

> To establish a breach of fiduciary duty under Ohio law, a plaintiff must show: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) a resulting injury. *Camp St. Mary's Ass'n of W. Ohio Conference of the United Methodist Church v. Otterbein Homes*, 176 Ohio App. 3d 54, 68 (2008). "A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another, and there is a resulting position of superiority or influence, acquired by virtues of this special trust." *Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996). Further, "[a] fiduciary relationship does not exist between a franchisor and a franchisee in the absence of a statute expressly creating such a fiduciary relationship, or in the alternative, absent an understanding, held by both parties to the subject agreement, that a special trust and confidence has been reposed by the fanchisee in the franchisor." *Saydell v. Geppetto's Pizza*, 100 Ohio App. 3d 111, 130 (1994).

Plaintiff's fiduciary claim relies heavily on the decision in *Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 244 F.R.D. 204, 219–20 (S.D.N.Y. 2007) (allowing a dealership's fiduciary duty claim to proceed against a manufacturer). That court noted, "[a]lthough the franchisor-franchisee relationship does not give rise to fiduciary obligations absent exceptional circumstances, Manhattan has alleged that a number of terms contained in the Dealer Agreements effectively grant Lamborghini 'the authority to exercise near life and death economic power over [Manhattan] . . . .'" *Id.* at 219.

Plaintiff argues several clauses in the SSA "mandate that confidential and proprietary financial and customer information be provided by Franklin Park" (Doc. No. 85 at 16). Allegedly, these clauses give rise to the "exceptional circumstances" noted in *Manhattan*. Plaintiff states:

- Paragraph 6(e) requires Franklin Park to use Ford's accounting system, and as part of that requirement, Paragraph 6(f) requires that every month Franklin Park submit a financial report to Ford in the format dictated by Ford. These reports must be compete [sic] statements of the true financial condition of the dealership, and must show the month and year-to-date condition of the company. Adjusted annual statements are also to be provided. Ford is to hold all of these documents in confidence.

- As a further reporting requirement, Paragraph 6(g) mandates that when Franklin Park sells a vehicle, it is to immediately submit information regarding the sale to Ford. Also, Paragraph 6(g) requires that whenever Ford requests, Franklin Park must furnish complete sales reports and data in whatever form Ford demands.

- Under Paragraph 12(a), Franklin Park must keep all records for two years, except warranty- and policy-claim records, which must be kept for one year.

- Finally, Paragraph 12(b) mandates that Franklin Park must allow Ford agents to inspect and audit all aspects of the dealership, including Franklin Park's records.

(Doc. No. 85 at 16).

First, *Manhattan* was decided at the pleadings stage and deals only with sufficiency of the allegations, not whether disputed facts should proceed to trial. 244 F.R.D. at 209. Here, Plaintiff's

5

pleadings also survived dismissal, but now fail to establish a genuine issue of material fact regarding the existence of a fiduciary relationship. Second, while Defendant requires monthly reports, it does not require Plaintiff to provide prospective customer lists or information related to its financing as did the manufacturer in *Manhattan*. *See* 244 F.R.D. at 219. Third, Defendant's sales information request does not establish a fiduciary relationship, and that is because Defendant is required to record such information under federal law. *See* 49 U.S.C. § 30117(b)(1). Fourth, Plaintiff admits Defendant's access to records serves an auditing purpose (Doc. No. 85 at 16). Auditing is inconsistent with the "confidence" and "special trust" necessary for a fiduciary relationship.

Plaintiff further argues Defendant's disproportionate power creates a fiduciary relationship, noting several requirements from Defendant including: vigorous and aggressive promotion and advertising; performance objectives; specific vehicle inventory; minimum capital; minimum staff; use of Defendant's signs; appearance of the premises; right of first refusal in the event of a sale; grounds for termination; and approval for any change in franchise ownership (Doc. No. 85 at 17–18). Yet, this laundry list is typically found in dealer contracts. Moreover, Plaintiff's president, Robert Fleisher, admits Defendant gives Plaintiff wide latitude. For example: Defendant allows Plaintiff to determine how much it spends and the medium used for advertising and promotion (Doc. No. 82-1 at 23); Plaintiff dictates its own staffing and human resources decisions (Doc. No. 82-1 at 22, 24); and although Defendant makes recommendations regarding the appearance of the premises, these have never been requirements (Doc. No. 82-1 at 33–34).

Plaintiff makes much of Defendant's power to terminate the SSA and therefore Defendant must possess disproportionate control (Doc. No. 85 at 17–19). But the SSA gives just as much, if not more, power to Plaintiff (Doc. No. 82-2 at 24–26). Plaintiff may terminate at-will with just 30 days

6

written notice (Doc. No. 82-2 at 24). Defendant may only terminate at-will if it gives Plaintiff 120 days written notice (Doc. No. 82-2 at 26). Additionally, Defendant's power to terminate for cause is limited to Plaintiff's voluntarily acts "contrary to the intent and purpose" of the SSA (Doc. No. 82-2 at 24–25) (noting insolvency, misrepresentation, transfer, and conviction for "any conduct . . . unbecoming a reputable business man.").

Finally, Plaintiff does not dispute that Defendant allows Plaintiff to sell outside of its market area (Doc. No. 82-1 at 22–23). Nor does Defendant dictate the prices that Plaintiff must set (Doc. No. 82-1 at 24). Defendant also plays no role in Plaintiff's purchase and sale of used cars (Doc. No. 82-1 at 24).

Plaintiff fails to point to any contract provision, or any case law, suggesting its relationship with Defendant was anything other than a typical franchisor-franchisee relationship. Indeed, other district courts, ruling on Defendant's SSA with other dealers, have refused to find the existence of a fiduciary relationship. *See, e.g.*, *Capital Ford Truck Sales, Inc. v. Ford Motor Co.*, 819 F. Supp. 1555 (N.D. Ga. 1992); *Rick Michaels Ford, Inc. v. Ford Motor Co.*, 1982 U.S. Dist. LEXIS 16502 (N.D. Ill. 1982).

**Predatory Practice**

Plaintiff alleges Defendant violated the OMVDA because "installing and consolidating the Lincoln and Mercury brands at the Brondes dealership" was a predatory and discriminatory practice violating Revised Code § 4517.59(A)(15) (Doc. No. 85 at 25). That statutes states:

7

> (A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall: . . .
> (15) Engage in any predatory practice or discriminate against any new motor vehicle dealer including discriminating against a franchisee, as compared to a same line-make franchisee, with regard to motor vehicle market allocation, motor vehicle sales expectations, motor vehicle penetration, motor vehicle planning volume requirements, customer service satisfaction requirements, dealership facility requirements, or dealer capitalization requirements . . .

Ohio courts have not interpreted the meaning of "predatory practice" or "discriminate" as used in the OMVDA. "[W]hen comparable legislation has been construed in other jurisdictions prior to the enactment of a similar Ohio statute, the interpretation given the law in the other jurisdictions is to be given great weight in construing the Ohio statute." *Koster v. Boudreaux*, 11 Ohio App. 3d 1, 6 (Ohio Ct. App. 1982); *see also Schneider v. Laffoon*, 40 Ohio St. 89, 96 (1965).

The current version of Revised Code § 4517.59 was adopted in 2010. Prior to this adoption, other jurisdictions defined what constitutes predatory practice or discrimination by a vehicle manufacturer against its dealers. A manufacturer is not predatory if it "acts in good faith and with good cause . . . ." *Saccucci Auto Grp., Inc. v. Am. Honda Motor Co., Inc.*, 2009 U.S. Dist. LEXIS 122015, * 21 (D. R.I. 2009) (internal quotations omitted). "Predatory conduct 'has no legitimate business justification other than to destroy or damage competition.'" *Id.* (citing *Great Escape, Inc. v. Union City Body Co. Inc.*, 791 F.2d 532, 541 (7th Cir. 1986)). Interpreting language nearly identical in the OMVDA, a Delaware court defined predatory practice or discrimination as a "sacrificing of present revenue with the aim of driving a competitor out of the market . . . ." *Dave Greytak Enters., Inc. v. Mazada Motors of Am., Inc.*, 622 A.2d 14, 20–21 (Del. Ch. 1992).

Defendant argues the decision to approve the Rouen/Brondes transaction did not violate the OMVDA for two independent reasons: its actions were neither predatory nor discriminatory (Doc. No. 81 at 25–26), and Defendant was required to approve the transaction under Section 4517.56(D)

8

of the OMVDA and therefore cannot be held liable under the provision at issue (Doc. No. 81 at 26–27).

Plaintiff counters that Defendant played an active role in facilitating the Rouen/Brondes transaction (Doc. No. 85 at 25–29). This evidence may be relevant to approval under Section 4517.56(D), but it in no way relates to whether Defendant was seeking to "destroy or damage" Plaintiff. Because Plaintiff fails to provide any evidence supporting Defendant's alleged predatory or discriminatory practice, this Court need not decide whether the OMVDA required Defendant's approval of the Rouen/Brondes transaction.

In support of its other allegations against Defendant, Plaintiff states the conclusions in the 2005 market plan used to approve the Rouen/Brondes transaction are not legitimate because they are "not based on any scientific or rational process" (Doc. No. 85 at 29). Plaintiff reaches this conclusion based on the testimony of Stephanie Miello, designer for the market plans, that such plans never recommend eliminating a dealer (Doc. No. 82-22 at 16). This argument misconstrues the purpose of these plans which is to provide data to dealers about their markets (Doc. No. 82-22 at 16). Defendant "isn't going to make a recommendation in front of a group of dealers to close a [dealership]" (Doc. No. 82-22 at 16).

Further, Defendant had legitimate business justifications for approving the transaction, as confirmed, again, by Plaintiff's own president:

> Q     Do you believe that in the circumstance where there are two Lincoln dealers . . . operating in the Toledo market that Ford is somehow collecting less revenue from vehicle sales that it otherwise would if there was only one dealer in town or in this market? . . . .
> A     Collecting less revenue—no.

9

> Q So their revenue picture is going to basically be identical whether or not they have one dealer or two dealers in this market, in your opinion?
> A No. I think they think they will make more money with two . . . .
>
> Q Is it your belief that there is no business . . . justification meriting having two . . . Lincoln dealerships in the Toledo market? . . . .
> A Correct.

(Doc. No. 82-1 at 30–31).

Defendant thought two dealerships were better than one, and making a profit is certainly a legitimate business justification. Nevertheless, Plaintiff contends that Defendant "made a conscious decision to choose Brondes over Franklin Park . . . ." (Doc. No. 85 at 25). There is absolutely no evidence in the record to support the charge that Defendant wanted to drive Plaintiff out of the Toledo market. The record indicates the opposite: Defendant preferred two dealerships.

Finally, Plaintiff contends Defendant knew the Toledo market could not support two dealerships. Plaintiff bases this claim on "common sense" and a conversation Plaintiff's president had with Randy Stewart, a regional manager for Defendant who apparently attempted to persuade Defendant to decrease the number of dealers in Toledo (Doc. No. 82-1 at 12). Defendant obviously did not heed his advice. Rather, Defendant relied on its 2007 Vision Study which indicated the preferred number of dealers in the Toledo market was two, not one (Doc. No. 82-21 at 4). Defendant's approval of the Rouen/Brondes transaction may not have been optimal -- indeed, it may even have been a bad decision -- but the Ohio statute does not prohibit bad decisions, only predatory and discriminatory ones.

## CONCLUSION

This Court holds Defendant did not have a fiduciary duty to Plaintiff and Defendant's approval of the Rouen/Brondes transaction was neither predatory nor discriminatory. For these reasons Defendant's Motion for Summary Judgment is granted, and this case is dismissed.

IT IS SO ORDERED.

                                                 s/ *Jack Zouhary*
                                             JACK ZOUHARY
                                             U. S. DISTRICT JUDGE

                                             October 31, 2011